## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SOUPMAN INC., et al., | Case No. 17-11313 (LSS) |
| Debtors.[1] | Jointly Administered |
|  | **Re: Dkt. No. 56, 137** |

## ORDER AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, INTERESTS AND ENCUMBRANCES; (B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT; AND (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion, dated June 23, 2017, [Docket No. 56] (the "*Motion*"), of the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") for the entry of an order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 1005, 2002, 6004, 6006, 9007, and 9014 (a) authorizing and approving the entry into, performance under and the terms and conditions of the Amended Asset Purchase Agreement by and between the Debtors and Gallant Brands, Inc. (the "*Buyer*"), dated September 6, 2017 (including all amendments, the "*APA*," a copy of which is attached hereto as **Exhibit 1**,)[2] whereby the Debtors have agreed to sell, and Buyer has agreed to acquire, substantially all of the Debtors' assets (collectively, and as specifically set forth and defined in the APA, the "*Purchased Assets*") other than the Excluded Assets, and the Debtors have agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined in

---

1 The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: The Original Soupman, Inc. (0182); Soupman, Inc. (8630); and Kiosk Concepts, Inc. (4839). The location of the Debtors' corporate headquarters and the service address for all Debtors is 1110 South Ave., Suite 100, Staten Island, NY 10314.

2    Capitalized terms used but not defined herein shall have the meaning set forth in the APA.

the APA, the "*Assumed Liabilities*") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "*Transactions*") for the purchase price (the "*Purchase Price*") of the sum of (i) cash in the amount of Two Million Dollars ($2,000,000.00) plus (ii) Fifty Thousand Dollars ($50,000) non-cash value for excluding D&O Claims and Avoidance Actions from the Purchased Assets plus (iii) One Hundred Percent (100%) of the Credit Bid in the approximate amount of Four Million Seven Hundred Sixty Five Thousand Dollars ($4,765,000) plus accrued interest; (b) authorizing and approving the sale of the Purchased Assets (the "*Sale*"), free and clear, to the maximum extent permitted by law, of any and all Liens (other than Permitted Liens), debts and claims (as that term is defined in section 101(5) of the Bankruptcy Code), Liabilities (including all Liabilities of the Debtors for Employment Related Laws, Complaints, and Obligations,[3] obligations, costs, expenses, causes of action, demands, guaranties, options, rights, contractual commitments, settlements, injunctions, restrictions, interests, encumbrances, reclamation rights, and similar matters of any kind whatsoever, whether known or unknown, fixed or contingent, or

---

[3] "*Employment Related Laws, Complaints, and Obligations*" shall mean all federal, state, or local employment laws and regulations, including but not‑limited to the Immigration Reform and Control Act; Title VII of the Civil Rights Act of 1964, as amended; The Fair Labor Standards Act; The Americans with Disabilities Act, as amended; The Family Medical and Leave Act, as amended; The Age Discrimination and Employment Act; The National Labor Relations Act; the California Fair Employment and Housing Act; ERISA; the WARN Act; OSHA administered whistleblower/anti-retaliation statutes that may be applicable, such as those pertaining to environmental, transportation laws, and consumer investment protection laws (Sarbanes Oxley and Dodd Frank); State and local anti-discrimination, anti-retaliation and whistleblower laws; Wage Orders issued by the California Industrial Welfare Commission; common law tort and contract claims; any other laws or regulations pertaining to the employment relationship between the Debtors and their current or former employees; all duties, obligations and requirements imposed by law, contract, or arising out of the Debtors' practices concerning: hiring, evaluations, promotions, terminations, classification of employees as exempt or non-exempt, the classification of employees as independent contractors, rest breaks, vacations, time off, pay practices, and any other employment practices; and any Claims, charges, complaints, administrative complaints, demand or lawsuits alleging violations of any Employment Related Laws and Obligations, judicially approved class action settlement agreements, consent decrees, judgments, other decrees, orders, injunctions, settlements, settlement agreements or conciliation agreements to which the Debtors are bound relating to labor and employment matters.

arising prior to or subsequent to the commencement of these chapter 11 cases (the "**Cases**"), and whether imposed by agreement, understanding, law, equity or otherwise (each of the foregoing collectively or individually, and including to the extent not already specified above, Successor or Transferee Liability, as defined in Paragraph 18 below, but excluding the Assumed Liabilities and Permitted Liens, the "**Adverse Interests**"), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Purchased Assets; (c) authorizing the assumption and assignment to Buyer of certain executory contracts and unexpired leases of the Debtors (collectively and as specifically identified and defined in the APA, the "**Assumed Contracts**") in accordance with the APA and this Order; and (d) granting other relief; and the Court having entered an order approving the bidding procedures (the "**Bidding Procedures**") and granting certain related relief on July 18, 2017 [Docket No. 137] (the "**Bidding Procedures Order**"); and the auction (the "**Auction**") having been held on August 28, 2017, for the consideration of Qualified Bids and the selection of the Successful Bidder (each as defined in the Bidding Procedures Order); and the Buyer having been selected as the Successful Bidder by the Debtors pursuant to the Bidding Procedures Order as set forth in the *Notice of Successful Bidder* [Docket No. 168]; and the Stalking Horse Bidder having been deemed the Backup Bidder as defined under the Bidding Procedures Order; and the Court having conducted a hearing on the Motion on August 29-30, 2017 and September 7, 2017 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the *Declaration of Michael Wyse in Support of Petitions and First Day Pleadings* [Docket No. 19], the APA, the Bidding Procedures Order, the record of the hearing before the Court on August 29-30, 2017; and having heard statements of counsel and the

3

evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue and Final Order

A.       This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts

C.       Actual written notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested entities including to the following parties: (i) the Office of the U.S. Trustee; (ii)

counsel for the Buyer; (iii) counsel to the DIP Lender; (iv) counsel to the Prepetition Secured Parties in the DIP Order; (v) any party that has asserted or that the Debtors believe may assert a lien in the Debtors' assets; (vi) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (vii) the United States Internal Revenue Service; (viii) the United States Securities and Exchange Commission; (ix) each of the Debtors' current landlords and (x) each counterparty to the Debtors' Contracts (as defined in the APA); (collectively, the "*Notice Parties*").

D.     The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion is required.  The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

E.     Debtors have served cure notices (the "*Cure Notices*") upon all executory contract and lease counterparties notifying such parties: (i) that the Debtors may seek to assume and assign certain contracts and leases on the Closing Date of the Sale or thereafter as provided in the APA and (ii) of the proposed Cure Amounts.  The service of the Cure Notices was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for such contracts and leases.  Each of the contract and lease counterparties has had an opportunity to object to the Cure Amounts set forth in the Cure Notices.

### Highest and Best Offer

F.     As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Auction contemplated by the Bid Procedures occurred on

5

August 28, 2017, in accordance with the Bid Procedures, and the Buyer was deemed the Successful Bidder. The process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase all of the Purchased Assets and assume all of the Assumed Liabilities.

G.    The Purchased Assets were adequately marketed by the Debtors, and the consideration provided by Buyer under the APA, as amended to include the Credit Bid in the Purchase Price, constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Purchased Assets and the assumption of all Assumed Liabilities, the granting of the releases to the Buyer Released Parties with respect to the Debtor Released Claims as set forth in paragraph 29 herein, and the performance of the other covenants set forth in the APA, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Buyer is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order. The Buyer's offer included an amount sufficient to satisfy the Bid Protections in full. The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets is a valid and sound exercise of the Debtors' business judgment.

H.    Approval of the Motion, the APA, and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and other parties in interest and there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly. The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA.

60274983.2

I.      Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

J.      At the Auction, the Stalking Horse Bidder's bid approved pursuant to the Bidding Procedures Order was next highest or otherwise best bid (the "***Backup Bid***") and was designated to be the Backup Bidder (as defined in the Bidding Procedures Order) in accordance with the Bidding Procedures Order.

K.      The Backup Bidder shall be required to keep its Backup Bid open and irrevocable until the earlier of 5:00 p.m. (ET) on the date that is twenty five (25) days after the date of the Sale Hearing (the "***Outside Backup Date***") or the closing of the transaction with the Buyer. Following entry of this Order, if the Buyer fails to consummate the Sale and Transactions because of a breach or failure to perform on the part of such Buyer, including for failure to close by the Stated Maturity Date of August 31, 2017 (as set forth in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Status; (II) Modifying the Automatic Stay; (III) Authorizing the Debtors to Enter Into Agreements with Soupman Lending LLC; and (IV) Authorizing the Use of Cash Collateral; (V) Scheduling a Final Hearing and (VI) Granting Related Relief* (as such order may be amended, modified, supplemented or granted on a final basis) [Docket No. 136] (the "***Final DIP Order***")), the Debtors shall consummate the Sale and Transactions with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Buyer's deposit, if any, shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Buyer. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty five (25) days after the date that the Debtors provide notice to the Backup Bidder that the Successful Bidder failed to

60274983.2

consummate the Sale and Transactions and that the Debtors desire to consummate the transaction with the Backup Bidder or five (5) calendar days after necessary regulatory approvals are completed by the Backup Bidder.

L.    In the event the Debtors consummate the Transactions with Backup Bidder, the Backup Bidder shall have all of the rights, protections and privileges of the Successful Bidder or Buyer for purposes of this Order, and shall be treated in all respects as the Successful Bidder or Buyer under the terms of this Order.

## Good Faith of Buyer

M.    The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the other hand, without collusion, in good faith and at arm's length.

N.    In accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA.

O.    The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Buyer is entering into the Transactions in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Given the lack of evidence to the contrary, neither the Debtors nor the Buyer has engaged in any action or inaction that would cause or permit the APA or the Transactions to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

## No Fraudulent Transfer

60274983.2

P.      The consideration (including the Credit Bid) provided by Buyer pursuant to the APA for its purchase of all Purchased Assets and the assumption of all Assumed Liabilities and the performance of the covenants contained in the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

Q.      There has been no showing that the Debtors or Buyer (i) have entered into the APA or propose to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) are entering into the APA or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

R.      By virtue of the Transactions contemplated by the APA, (i) the Buyer is not a continuation of the Debtors or their respective estates, there is no substantial continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors or their estates, and Buyer does not constitute a successor to the Debtors or their estates, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates.

### Validity of Transfer

S.      The Debtors and the Buyer have authorized the execution and delivery of the APA, the sale of all Purchased Assets to Buyer and the assumption of all Assumed Liabilities by

9

Buyer. The Debtors and the Buyer (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the APA and to consummate the Transactions, and no further consents or approvals are required for the Debtors or the Buyer to consummate the Transactions contemplated by the APA, except as otherwise set forth in the APA.

T.      With the exception of the Assumed Liabilities, Buyer shall have no obligations with respect to any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their property, including, without limitation, the liabilities of the Debtors specifically excluded under the APA (the "*Excluded Liabilities*"), and the Buyer is released from any and all claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Purchased Assets.

U.      The consummation of the Sale and the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(k), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with respect to Assumed Contracts, all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

V.      The Purchased Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The sale of the Purchased Assets to the Buyer will be, as of the Closing Date a legal, valid and effective transfer of such assets.

### Section 363(f) Is Satisfied

10

W.    The Debtors may sell and assign the Purchased Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests, and the Transactions will not subject the Buyer or any of the Buyer's assets to any liability for any Adverse Interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.    Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Cure Notice are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

X.    Buyer would not have entered into the APA and would not consummate the sale of all Purchased Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Purchased Assets was not free and clear, to the maximum extent permitted by law, of all Adverse Interests or if the Buyer would be liable for any Adverse Interests, including and as applicable, any Excluded Liabilities.

Y.    The sale of the Purchased Assets to the Buyer will be, as of the Closing Date a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Buyer with all right, title and interest of the Debtors to the Purchased Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests.    A sale of the Purchased Assets other than one free and clear, to the maximum extent permitted by law, of all Adverse Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.    Therefore, the Sale contemplated by the APA is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

11

**Assumption and Assignment of the Assumed Contracts**

Z.      The assumption and assignment of the Assumed Contracts, if any, pursuant to the terms of this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

AA.     The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  The Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of this Order under all of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of this Order under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Assumed Contracts is free and clear, to the maximum extent permitted by law, of all Adverse Interests against Buyer.

BB.     Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

CC.     No default exists in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay cure amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**Compelling Circumstances for an Immediate Sale**

12

DD.     Time is of the essence.  To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA.  Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004.

EE.     The Transactions are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein.

**NOW THEREFORE, ITS IS HEREBY ORDERED THAT:**

### General Provisions

1.     The Motion is granted and approved, subject to the terms and conditions set forth herein.  The Sale and the Transactions contemplated by the APA are approved.

2.     All objections to the Motion, the Cure Notices or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including all non-Debtor parties to the Contracts.

3.     Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on July 18, 2017, are incorporated herein by reference.

4.     Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### Approval of the APA

5.     The APA, including all of the terms and conditions thereof, and all of the Transactions contemplated therein are approved.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of

13

such provision, it being the intent of the Court that the APA be authorized and approved in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order.

6.    The Debtors are authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement and fully close the Transactions, including the Sale to Buyer of all Purchased Assets, in accordance with the terms and conditions set forth in the APA and this Order, and (b) assume and assign any and all Assumed Contracts.

7.    All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to Buyer in accordance with the APA and this Order.

8.    At the Closing, the Debtors will be authorized to fully perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order, and the Transactions.

9.    Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

10.    To the greatest extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

60274983.2

11.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

## Sale and Transfer Free and Clear of Adverse Interests

12.    As of the Closing Date, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear, to the maximum extent permitted by law, of any and all Adverse Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Purchased Assets. Such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. All person or entities, presently or on or after the Closing, in possession of some or all of the Purchased Assets shall surrender possession of the Purchased Assets to Buyer or its respective designees prior to the Closing.

13.    This Order (a) shall be effective as a determination that, as of the Closing, no Adverse Interests other than Assumed Liabilities will be assertable against the Buyer or any of its respective assets (including the Purchased Assets); (b) shall be effective as a determination that, as of the Closing (i) the Purchased Assets shall have been transferred to Buyer free and clear, to the maximum extent permitted by law, of all Adverse Interests and (ii) the conveyances described herein have been effected; and (c) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or

15

instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

14.    Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities (including all liabilities of the Debtors for Employment Related Laws, Complaints, and Obligations) and the Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the ownership, sale or operation of the Purchased Assets and the business prior to the Closing or the transfer of Purchased Assets to Buyer of the Debtors.

15.    Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the ownership, sale or operation of the Purchased Assets and the business prior to the Closing or the transfer of Purchased Assets to Buyer are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests against the Buyer, its property or the Purchased Assets.  Following the Closing, no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Adverse Interest, or based on any action the Debtors may take in the Cases.

16.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in

16

the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity has with respect to such Purchased Assets, then only with regard to the Purchased Assets that are purchased by Buyer pursuant to the APA and this Order, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against the Buyer and the applicable Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Purchased Assets that are part of the estates of the Debtors are being sold to Buyer free and clear, to the maximum extent permitted by law, of Adverse Interests pursuant to section 363(f) of the Bankruptcy Code.

### No Successor or Transferee Liability

17.     The Buyer shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions, or the transfer, operation or use of the Purchased Assets, or the employment of any transferred Employees (as defined in the APA) to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations as an assignee under the Assumed Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax,

17

labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

18.     The Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (collectively, "*Successor or Transferee Liability*") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, or arising out of any Employment Related Laws, Complaints, and Obligations, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets or the Business prior to the Closing.

19.     Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require the Buyer to (a) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or

60274983.2

administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, or its assets (including the Purchased Assets), or its successors and assigns, with respect to any (a) Adverse Interest or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Adverse Interest; (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

### Good Faith of Buyer

21.    The Transactions contemplated by the APA are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

22.    The Sale was non-collusive, fair and reasonable and conducted in good faith and pursuant to the Bid Assessment Criteria. The Transactions under the APA have been bargained

19

for and undertaken by the Debtors and the Buyer at arm's length and without collusion. Accordingly, the Buyer is entitled to all the protections and immunities under section 363(n) of the Bankruptcy Code. Upon the Closing, the Buyer and its affiliates, subsidiaries, shareholders, officers, directors, attorneys and other agents or representatives shall be deemed released from any claims or causes of action related to the consummation of the Transactions, participation in the Auction or satisfaction of the Bid Procedures.

23.    The consideration provided by Buyer for the Purchased Assets under the APA is fair and reasonable and the sale may not be avoided under section 363(n) of the Bankruptcy Code and the Buyer's Credit Bid included as part of the consideration for the Purchased Assets was a valid and proper offer pursuant to the Bidding Procedures and sections 363(b) and 363(k) of the Bankruptcy Code.

## Assumed Contracts

24.    The Debtors are authorized at the Closing to assume and assign each of the Assumed Contracts, if any, in accordance with the APA and this Order to Buyer free and clear, to the maximum extent permitted by law, of all Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer. The payment of the applicable Cure Amounts by the Buyer shall (a) effect a cure of all defaults existing thereunder as of the Closing, (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to Buyer, constitute adequate assurance of future performance thereof.

25.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to

20

60274983.2

terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Assumed Contracts in accordance with the APA but will be effective and binding upon the Buyer with respect to any purported assignment for the remaining term of any Assumed Contract.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of Buyer.

26.    Each non-Debtor counterparty to the Assumed Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing or the transfer of the Purchased Assets, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against Buyer (or its property, including the Purchased Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing or arising by reason of the transfer of the Purchased Assets, except for the Assumed Liabilities.  In addition, without relieving Buyer of its obligations under the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations under section

60274983.2

365(d)(3) of the Bankruptcy Code prior to the assumption and assignment or rejection of any Assumed Contracts.

27.     Upon the Closing, Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and shall pay all outstanding undisputed cure amounts, if any, with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts for any breach thereof occurring after such assignment.   There shall be no rent or contract accelerations, assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

28.     Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

### Other Provisions

29.     Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the "***Debtor Releasing Parties***"), hereby release, remise, acquit and forever discharge the Buyer and its respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies and partners (collectively, the "***Buyer Released Parties***"), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or

22

unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law or other of any kind, nature, or description, including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to any action or inaction of any Buyer Released Party relating in any way to the Cases, the Debtors, their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, including without limitation, any action or inaction of any Buyer Released Party with respect to the Cases (the "***Debtor Released Claims***"); *provided, however*, that the foregoing release shall not apply to the Debtors' rights or the Buyer's obligations under the APA or this Order.

30.     Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and Buyer, without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates.

31.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.  Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document, with the exception of the DIP Financing.

32.     All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against the Buyer or the Purchased Assets to recover property on account of any Adverse Interests or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the APA.  All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against the Buyer or the Purchased Assets for any liability whatsoever associated with the Excluded Assets.

33.     The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

34.     Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is similar or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Purchased Assets, and each Debtor is authorized to change its corporate name to a name which (a) does not use the name "Original Soupman," or "Soupman" or any other name that references or reflects any of the foregoing, including those listed on Schedule 2.1(f) of the APA, in any manner whatsoever or any of the Debtors' predecessors in any manner whatsoever, (b) is otherwise substantially dissimilar to its present name and (c) is approved in writing by Buyer.

35.     Within one (5) business days of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit**

**2** (the "***Notice of Sale Closing and Effective Date of Amendment of Case Caption***") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SOUP LIQUIDATION LLC, *et al.* | ) | Case No. 17-11313 (LSS) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

[1]         The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: _____ (_____). The mailing address for the Debtors, solely for purposes of notices and communications, is _____.

36.    Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 17-11314 and 17-11315, consistent with this Order.

37.    From and after the Closing Date, the Debtors (or any successor thereto) shall have access, at reasonable times and at their expense, and in a manner so as not to unreasonably interfere with Buyer's normal business operations, to the books and records acquired pursuant to APA to enable the Debtors to prepare Tax, financial or court filings or reports, to respond to court orders, subpoenas or inquiries, investigations, audits or other proceedings of Governmental Authorities and to prosecute and defend legal actions or for other like purposes, including, but not limited to claims objections and resolutions.   If Buyer desires to dispose of any such records, Buyer, shall, thirty (30) days prior to such disposal, provide the Debtors (or any successor thereto) with a reasonable opportunity to remove such records to be disposed of at the Debtors' expense.

60274983.2

38.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Buyer and its assets, including the Purchased Assets, against any Adverse Interests and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code to transfer the Purchased Assets and the Assumed Contracts to Buyer. This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

39.     The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

40.     The Transactions contemplated hereunder are not receiving an exemption under section 1146(a) of the Bankruptcy Code.

41.     Notwithstanding anything in this Order or otherwise, on the Closing Date, the proceeds of the Sale shall be paid to the DIP Lender for permanent application and complete and indefeasible satisfaction of the DIP Obligations described Final DIP Order.

42.     On the Closing Date, the Debtors are authorized to pay to the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement as set forth in the Bidding Procedures Order.

60274983.2

43.     Nothing in this Order shall be deemed or construed to modify or amend the Final DIP Order. Notwithstanding anything to contrary contained herein, any payment to be made or authorization contained hereunder shall be subject to the requirements imposed on the Debtors under the Final DIP Order.

44.     Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be effective immediately upon entry, and the Debtors and Buyer are authorized to close the sale immediately upon entry of this Order.

45.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

46.     To the extent there are any inconsistencies between the terms of this Order, and the APA, the terms of this Order shall control.

Date: September 7, 2017
        Wilmington, Delaware

HON. LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

27

60274983.2